FILED'10 SEP 30 13:06USDC·ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERESA F. PADGETT,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Commission,

Defendant.

Civil No. 09-733-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff Teresa F. Padgett brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of

the Commissioner's final decision granting plaintiff's applications for disability insurance

benefits and supplemental security income benefits, beginning on June 1, 2004, but not prior to

that date. For the several reasons set forth below, the decision of the Commissioner should be

affirmed.

## **BACKGROUND**

Plaintiff applied for benefits alleging disability commencing February 1, 2000. Her

applications were denied. Plaintiff requested a hearing, which was held before an Administrative

Law Judge (ALJ) on August 10, 2005. Plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. (Tr. 439-80.) The ALJ rendered a partially favorable decision on September 9, 2005, determining that plaintiff was disabled as of August 24, 2004, and the Appeals Council denied plaintiff's request for review. In plaintiff's appeal to the district court, the parties stipulated to reversal and remand for further proceedings. The ALJ's decision was vacated and a second hearing was held on September 24, 2007. Plaintiff did not appear but her counsel was present. A medical expert appeared as did a vocational expert. (Tr. 596-618.) The ALJ rendered a partially favorable decision on December 8, 2007, determining that plaintiff was disabled as of June 1, 2004. The district court remanded pursuant to sentence six based upon the stipulation of the parties due to lack of a hearing transcript.[1] The ALJ's second decision was vacated and a third hearing was held on March 23, 2009. Plaintiff waived her right to appear and the ALJ made his decision on the record before him. (Tr. 555.) Upon de novo review of the record, the ALJ rendered a partially favorable decision on April 22, 2009, determining that plaintiff was disabled as of June 1, 2004.

At the time of plaintiff's alleged onset date of disability, she was forty-five years old, and was forty-nine years old on June 1, 2004, the date the ALJ found she was disabled. Plaintiff completed the twelfth grade, taking a special education class in her last year of school, and received a "regular diploma." (Tr. 445.) Plaintiff has relevant past work experience as a caregiver / home health aide, production worker, and cleaner/housekeeper. The relevant medical evidence is discussed below.

//
_____

[1]    The transcript was subsequently transcribed. (Tr. 596-618.)

2 - REPORT AND RECOMMENDATION

## STANDARDS

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, <u>Ceguerra v. Sec'y of HHS</u>, 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." <u>Flake v. Gardner</u>, 399 F.2d 532, 540 (9th Cir. 1968); <u>see also</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

3 - REPORT AND RECOMMENDATION

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard v.

Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate

an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled.

Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial

gainful activity."  Id.; 20 C.F.R. §§ 404.1520(b), 416.920(b).  In the present case, the ALJ found

that plaintiff had not engaged in substantial gainful activity during the period under review.  (Tr.

557.)

In step two, the Commissioner determines whether the claimant has a "medically severe

impairment or combination of impairments."  If the Commissioner finds in the negative, the

claimant is deemed not disabled.  If the Commissioner finds a severe impairment or combination

thereof, the inquiry moves to step three.  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c),

416.920(c).  In the instant case, the ALJ found that plaintiff has had, since the alleged onset date

of February 1, 2000, the following severe impairments:  degenerative disc disease with obesity,

breast cancer, and mental impairments which are severe in combination and include learning

disorder, phonological disorder, dysthymic disorder, generalized anxiety disorder, somatoform

4 - REPORT AND RECOMMENDATION

disorder, and dependent personality organic mental disorder. (Tr. 557-59.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that, since the alleged onset date, plaintiff has not had an impairment or combination of impairments which meets or medically equals one of the listed impairments. (Tr. 559-61.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Regulation (SSR) 96-8p. The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. Id. In this case, the ALJ found that, prior to June 1, 2004, when she became disabled, plaintiff retained the RFC to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit up to six hours in an eight hour workday; she could perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and she should avoid concentrated exposure to extreme cold; and she retained the ability perform

simple, routine, repetitive work with no more than occasional public contact.  (Tr. 561-63.)

Beginning on June 1, 2004, the ALJ found that plaintiff had the RFC to lift and/or carry up to 10

pounds occasionally and less than 10 pounds frequently, stand and/or walk less than six hours in

an eight hour workday, and sit less than six hours in an eight hour workday; and her postural,

environmental, and non-exertional limitations remained the same.  (Tr. 564.)  In this case, the

ALJ found that, since her alleged onset date, plaintiff has been unable to perform any past

relevant work.  (Tr. 564)  Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the

claimant is deemed disabled.  Here, the ALJ found that, prior to June 1, 2004, considering

plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in

the national economy that plaintiff could  have performed.  (Tr. 564-65.)  The ALJ found further

that, beginning on June 1, 2004, there were not a significant number of jobs in the national

economy that plaintiff could perform.  (Tr. 565.)  Therefore, the ALJ found that plaintiff was not

under a disability prior to June 1, 2004, but became disabled on that date and has continued to be

disabled through the date of the decision.  (Tr. 565, 566.)

## DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because the ALJ erred by[2]:  (1)

not properly assessing the medical evidence; (2) not properly crediting her testimony; (3) not

---

[2]    The court will consider plaintiff's assertions of error in a different order than presented in the
parties' briefs.

properly crediting lay witness testimony; (4) not including all of her functional limitations in the RFC; (5) relying on Medical-Vocational Rule 202.20 as a framework for finding her not disabled; and (6) failing to certify that the vocational testimony was consistent with the Dictionary of Occupational Titles (DOT).

## Physicians' Opinions

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant. 20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). A treating physician is one who is employed to cure. Magallanes, 881 F.2d at 751. His opinion is given more weight because he has a greater opportunity to know and observe the patient. Id. Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.926(d)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Sec'y of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and

7 - REPORT AND RECOMMENDATION

convincing reasons for doing so.  Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v.

Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).  If a treating or examining physician's opinion is

contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons,

based on substantial evidence in the record, for disregarding the opinion of the treating or

examining physician.  Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th

Cir. 1996).  The ALJ can meet this burden by setting out a detailed and thorough summary of the

facts and conflicting medical evidence, then stating his interpretation, and making findings.

Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762.  Further, the

opinion of an examining physician is entitled to greater weight than the opinion of a

nonexamining physician.  Lester, 81 F.3d at 830.

**Dr. Cochran**

Plaintiff contends that the ALJ did not provide legitimate reasons for not fully crediting

the testimony from Dr. Cochran.  She specifically argues that, although the ALJ accepted the

diagnoses reported by Dr. Cochran, the ALJ did not include any of the functional limitations

identified by him.  Defendant responds that Dr. Cochran did not identify any functional

limitations in his report, and plaintiff's symptoms were incorporated into the limitations included

by the ALJ in the RFC.

On April 10, 2005, John Cochran, Ph.D., conducted a psychological evaluation of

plaintiff.  Neurobehavioral cognitive status examination testing showed deficits in attention,

language repetition, intermediate memory, with moderate deficits in short-term memory, abstract

reasoning and concept formation, and severe deficits in intermediate memory; she showed no

deficits in calculation, comprehension, design memory and construction, or social judgment.  On

8 - REPORT AND RECOMMENDATION

intelligence testing, plaintiff had a verbal score of 83 and performance score of 91, with a full-scale score of 85, placing her at the very end of the low average range or just above the borderline range. Following a diagnostic interview, mental status examination, and psychological testing, Dr. Cochran's pertinent diagnostic impressions were: Axis I dysthymic disorder (late onset), somatoform disorder, pain disorder (associated with both psychological factors and a general medical condition)-chronic, generalized anxiety disorder, phonological disorder, and cognitive disorder NOS (mild to moderate impairment in learning new material, mild short-term memory problems and moderate intermediate memory problems); Axis II dependent personality disorder; and Axis V GAF of 55[3]. In reporting in narrative form how the psychiatric conditions affected plaintiff's ability to independently, appropriately, effectively, and on a sustained basis in a competitive work environment perform non-exertional work requirements, Dr. Cochran essentially explains his diagnoses; he noted the cognitive deficit with learning new material and memory problems, supra. He also opined that, when stressed, plaintiff is prone to develop anxiety and depressive disorders, see supra. (Tr. 419-32.)

   In his decision, the ALJ found plaintiff was limited by mental impairments, referencing diagnoses of mental impairments and referencing Dr. Cochran's report. He includes a summary of Dr. Cochran's report, noting certain of his findings. In arguing that the ALJ did not include functional limitations found by Dr. Cochran, she sets out as examples, "prone to anxiety and depression when stressed, concentration problems, judgement limitations, sensitive to criticism."

---

   [3]    A global assessment of functioning score of 51 to 60 means: **"Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) at 32.

9 - REPORT AND RECOMMENDATION

(Pl. Brief at 16.)  The court agrees with defendant that these limitations were included by the ALJ in his RFC finding that plaintiff was limited to simple, routine, repetitive work with no more than occasional public contact.  (Tr. 561, 563.)  The ALJ did not err in considering Dr. Cochran's opinion.

**Salem Hospital Physical Capacity Evaluation**

Plaintiff contends that the ALJ failed to discuss this evaluation.  Defendant concedes that the evaluation was not discussed by the ALJ but argues that any such failure is harmless.

Dave Dery, PT, evaluated plaintiff's physical capacity on August 24, 2004, finding that she demonstrated physical capacity in the sedentary work range, with extreme limitation in standing, moving about, and repetitive use of her hands.  (Tr. 366-73.)

As defendant points out, this evaluation was done in August 2004 after the June 1, 2004, date that the ALJ found that plaintiff was disabled.  (Tr. 564.)  Plaintiff does not show that she was harmed by the ALJ's failure to discuss this evaluation.  If this failure was error, it was harmless.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)  (recognizing application of harmless error in social security cases).

**State agency non-examining physicians**

Plaintiff contends that the ALJ's reliance on the physical RFC found by the agency physicians is error because "The evidence from the non-examining state agency physicians is not substantial evidence."  (Pl. Brief at 18.)  Defendant responds that the agency physicians' opinions were consistent with the evidence and it was proper for the ALJ to rely on them.

In making her argument, plaintiff cites the RFC Assessment-Physical completed by Sharon Eder, M.D., on September 24, 2003 (Tr. 305-10), and the hypotheticals posed to the

vocational experts at the August 2005 hearing (Tr. 475) and the September 2007 hearing (Tr. 609) which referenced the assessment made by State Disability Determination Services. The limitations included in the form are those determined by the ALJ.

While the opinion of a non-examining physician cannot "by itself" and "'with nothing more'" constitute substantial evidence to support an ALJ's decision, the opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. Lester, 81 F.3d at 831; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, page one of the RFC assessment form instructs the physician to base conclusions on all evidence in the file: "(clinical and laboratory findings' symptoms; observations; lay evidence; reports of daily activities; etc.)." (Tr. 305.) There is nothing which indicates that Dr. Eder's conclusions are contradicted by all other evidence in the record such that her opinion is not substantial evidence and plaintiff does not point to any such evidence. See Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 752.

The court concludes that the ALJ did not commit any error in considering the medical evidence.


**Plaintiff's credibility**

Plaintiff contends that the ALJ provided a boiler plate finding that she was not fully credible and did not give any reasons why he did not credit her testimony of problems with leg swelling, back pain, hand pain, and balance problems. Defendant responds that the ALJ gave clear and convincing reasons to discredit plaintiff's claims.


11 - REPORT AND RECOMMENDATION

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider, for example:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course
of treatment; and (3) the claimant's daily activities. . . .  In evaluating the
credibility of the symptom testimony, the ALJ must also consider the factors set
out in SSR 88-13. . . .  Those factors include the claimant's work record and
observations of treating and examining physicians and other third parties
regarding, among other matters, the nature, onset, duration, and frequency of the
claimant's symptoms; precipitating and aggravating factors; functional restrictions
caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, the ALJ determined that plaintiff's impairments could reasonably be expected to

produce some degree of the symptoms alleged by her but her statements concerning the intensity,

persistence, and limiting effects of these symptoms were not credible prior to June 1, 2004, to the

extent they are inconsistent with the RFC assessment.

The ALJ first found that, while plaintiff's disc disease credibly results in some postural

limitations and limitations in the ability to sit, stand, and walk, medical records did not support

limitations to the extent alleged by her.  He noted that after treatment of cellulitis in June 2003,

she was released from work for only one month and there are no records that suggest she had any

greater limitations than those found.  A review of plaintiff's medical records for the relevant

period shows that she underwent a bone density DEXA scan in October 2002.  The view of the

lumbar spine showed a degenerative disc at L4-5 with sclerosis on the right side of L4.  (Tr. 250,

256; see Tr. 557.)  She complained of low back pain in July 2002.  (Tr. 266; see Tr. 557.)  The

Ninth Circuit has found that, "While subjective pain testimony cannot be rejected on the sole

ground that it is not fully corroborated by objective medical evidence, the medical evidence is

still a relevant factor in determining the severity of the claimant's pain and its disabling effects."

Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); see 20 C.F.R. § 416.929(c)(2).

The ALJ also found that, while plaintiff stated she was unable to work on her feet for long periods due to leg swelling, the examination records revealed only mild lower extremity pitting edema. This is supported by examination records for the period from mid-2000 through April 2003. (Tr. 238, 240, 242, 248, 249, 265, 266, 267, 269, 271, 274-75, 276, 277, 278, 279, 280, 283, 286.) See id. The ALJ also found that her condition was improved with appropriate treatment, which is supported by the record. (Tr. 237, 240, 242, 265, 266, 267, 269, 271, 276, 277, 279.) A good response to treatment supports an adverse credibility finding as to the severity of an impairment. See Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996); Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007).

The ALJ found that during the relevant period, plaintiff lived alone and was independent in personal needs and activities of daily living. She performed grocery shopping, handled finances, attended church on Sundays, performed light housework and prepared meals. He noted particularly that plaintiff continued to work part-time as a caregiver and housekeeper after her alleged onset date until mid-2004. The ALJ found these activities inconsistent with her claim of total disability. Plaintiff completed agency reports in March and September 2003 stating that she lived alone. She indicated she prepared her own meals. Plaintiff stated she did the laundry weekly and washed dishes daily; in March she stated she did sweeping and mopping floors and in September stated her sister came over every other week to do heavy cleaning. She shopped for groceries weekly and indicated in September that she used the store wheelchair. (Tr. 103-10, 143-49.) Plaintiff's work activity reports indicate that she began working at Senior Services as a

14 - REPORT AND RECOMMENDATION

housekeeper / caregiver in 2001 for two to five hours a day. Her duties included washing and drying clothes, cleaning dishes and bathrooms, making appointments and taking clients to appointments. She lifted and carried laundry baskets and groceries. (Tr. 77-82A, 115-27.) At the August 2005 hearing, plaintiff testified that she was currently working at senior services disability as a housekeeper. She did the same tasks but they were harder for her to do; she used to work two days a week and currently worked about two and one-quarter hours a day. (Tr. 446-48.) Daily activities of a claimant may be used by the ALJ to show capability of performing competitive work on a sustained basis, and the ALJ's interpretation of the evidence here is reasonable and supported by the record. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Rollins, 261 F.3d at 857; Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ's reasons for discounting plaintiff's credibility determination are supported by substantial evidence in the record.

**Lay witness testimony**

Plaintiff contends that the ALJ failed to provide clear, convincing, and germane reasons for not fully crediting each of her witnesses.

An ALJ must consider the testimony of friends and family members. Smolen, 80 F.3d at 1288. To disregard such lay testimony violates 20 C.F.R. §§ 404.1513(e)(2) and 416.913(e)(2), which mandates consideration of observations by non-medical sources regarding how an impairment affects a claimant's ability to work. See SSR 96-7p. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for

15 - REPORT AND RECOMMENDATION

doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Stout, 454 F.3d at 1053; Dodrill, 12 F.3d at 919.

The ALJ considered statements of plaintiff's witnesses, finding them generally credible to the extent that they reported observations of behavior demonstrated by plaintiff.  He noted that their information was considered in conjunction with the objective medical record, findings, and assessments.

### Cecilia Bryant

Plaintiff contends that the ALJ mischaracterized her testimony and that of her sister, Ms. Bryant.  At the August 2005 hearing, plaintiff testified that she did not have problems with bending over at the waist as long as she didn't pick up heavy stuff.  When asked what she considered heavy, she responded five pounds or less and used as an example:

A      I buy distilled water, and I have a hard time even picking that up . . . . And I have to be careful of that even to pick up.

A      So what size are the containers of distilled water?

Q      It was a gallon.

. . . .

Q      Do you pick up one or two of those at a time?

A      No way, sir.

Q      Just one at a time?

A      Yes.

Q      Okay.

A      And close to me too.

16 - REPORT AND RECOMMENDATION

(Tr. 458-59.) Ms. Bryant testified that plaintiff has muscle weakness in both of her hands. In response to the question, "Well, what problems do you notice then because of weakness with the hands?," she responded: "The problem of gripping, even holding a gallon milk she has a hard time. She has to put it down." (Tr. 469.) The ALJ noted in his decision that, "Ms. Bryant's testimony that the claimant had difficulty lifting a gallon of mil[k] due to hand weakness is inconsistent with the claimant's own testimony that she has no difficulty lifting a gallon of water." (Tr. 563.) It is reasonable to conclude from plaintiff's testimony that a gallon of water is the heaviest she can lift. Further, her answer was in the context of problems bending over at the waist. The concludes that the ALJ's reason for discounting Ms. Bryant's testimony is germane to her.[4]

### Rose Marie Potash

Ms. Potash is plaintiff's employer and friend. She completed a Third Party Information on Activities of Daily Living and Socialization in March 2003. She stated she saw plaintiff twice a week. In "Remarks," Ms. Potash wrote in pertinent part: "I have been disabled since 1994 with arthritis and fibromyalgia. Although I am not medically trained, I believe she has these same diseases." (Tr. 88-99.) The ALJ found in his decision: "In addition, Ms. Potash has reported the claimant experienced chronic pain that she has speculated results from 'fibromyalgia' []. However, medical records reveal no evidence the claimant has been diagnosed with fibromyalgia." (Tr. 563.) The Ninth Circuit has found that medical diagnoses are beyond the competence of lay witnesses and do not constitute competent evidence. Nguyen, 100 F.3d at

---

[4]    The ALJ must give only a reason  germane to the witness to discount the testimony, supra. The authority cited by plaintiff in support of her assertion that the reason must be clear and convincing relates to discounting a plaintiff's testimony, not that of a lay witness.

17 - REPORT AND RECOMMENDATION

1467 (citing Vincent *ex rel.* Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)).  The ALJ

gave a reason, germane to Ms. Potash, for discounting her testimony.

**Nancy Proctor**

Plaintiff's friend, Ms. Proctor, completed a Function Report - Adult - Third Party in

August 2003.  She states she sees plaintiff every day.  In responding to a question about shopping

by plaintiff, Ms. Proctor states:  "in grocery store with a wheel chair."  In response to the

question, "Does the disabled person need the use of any of the following?" she checked boxes for

"Cane" and "Wheel Chair," and in response to the question, "Which of these was prescribed by a

doctor?" she stated "cane & wheel chair, if on cement & cane at all times."  She said it was

"Unknown" when it was prescribed.   (Tr. 134-42.)  The ALJ found,

> While Ms. Proctor reported the claimant used a cane and a wheelchair for
> assistance with ambulation, there is no indication that such assistive devices had
> been prescribed as medically necessary [].  Moreover, the necessity of using a
> cane and wheelchair is inconsistent with the claimant's reported [sic] that she
> continued to work two or more hours per day providing care and housekeeping
> services for an elderly woman.  She testified these services including cooking,
> taking care of her cat, helping her in the shower, vacuuming, cleaning the
> bathroom and kitchen, dusting, and taking out the trash.

(Tr. 563.)  The ALJ's stated reason that Ms. Proctor's statements about plaintiff's use of a cane

and wheelchair as inconsistent with plaintiff's acknowledged housekeeping job duties is a

germane reason to discount Ms. Proctor's testimony.

//

//

//

//

18 - REPORT AND RECOMMENDATION

**Plaintiff's RFC**

Plaintiff contends that the ALJ's RFC did not include all of her functional limitations, specifically her chronic venous insufficiency, her chronic pain disorder, and her depression/dysthymic disorder.

### Chronic venous insufficiency

Plaintiff contends that the ALJ erred by not including limitations that allowed her to lie down or to elevate her legs. The ALJ discussed the medical evidence relating to this condition, usually described in the records as a mild pitting edema, noting plaintiff's prescription medication and use of support hose for the condition. He found that it posed no limitation on plaintiff's ability to do basic work activities and, thus, was non-severe. (Tr. 559.) Although found non-severe, plaintiff's venous insufficiency was considered in the RFC found by the ALJ. (See Tr. 233 (228-33), 307 (305-10), 556, 559.) A review of the medical records show that plaintiff was treated with prescription drugs and use of above the knee support hose, and was advised to elevate her legs to help with symptoms, but there is no indication that such elevation necessitated a limitation in performing work activities. (Tr. 238, 242, 271, 274, 276, 278.) There is no indication in the records of any advice to lay down for the condition. The court has found that the ALJ properly discounted plaintiff's testimony and that of lay witnesses. The ALJ did not commit error in not including any limitation due to plaintiff's leg swelling and venous insufficiency.

### Chronic pain disorder

Plaintiff contends that she experienced pain that limited her ability to perform her own cooking and household chores as well as lifting laundry baskets, even struggling to lift a gallon

19 - REPORT AND RECOMMENDATION

of water and, the weight limitations contained in the RFC exceed the weight of a gallon of water. Considering the medical record, the ALJ found that plaintiff's degenerative disc disease, exacerbated by obesity and pain disorder was severe, posing some limitations upon her capacity to work. (Tr. 557.) The RFC found by the ALJ included the ability to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. (Tr. 561, 563.) The court has found that the ALJ properly discounted plaintiff's testimony and that of lay witnesses as to the limitations plaintiff claims should have been included in the RFC finding. Accordingly, there is no error in not including in the RFC the limitations proposed by plaintiff.

**Depression/Dysthymic disorder**

Plaintiff contends that the ALJ did not include any functional limitations relating to her dysthymic disorder. In support, she references reported GAF scores of 50. In assessing plaintiff's mental impairments, the ALJ considered Psychiatric Review Technique Form (PRTF) Assessments completed in May and September 2003 by state agency consultants, Dr. Paul Rethinger, Ph.D., and Frank Lahman, Ph.D., respectively, along with evaluations by Dr. LeBray, Dr. Cochran, and Dr. Pitchford. (Tr. 558.) Drs. Rethinger and Lahman[5] included affective disorder - depression in their medical dispositions. At the time they completed the PRTF assessments, Drs. Rethinger and Lahman also completed Mental Residual Functional Capacity (MRFC) Assessments. (Tr. 207-10, 211-23, 311-23, 324-27.) The MRFC Assessments indicated plaintiff was moderately limited in the ability to understand and remember, and to carry out, detailed instructions; and moderately limited in the ability to interact appropriately with the general public. (Tr. 207-09, 324-26.) Dr. Rethinger found, in pertinent part, that

---

[5]    The court has found, supra, that the opinions of these doctors constitute substantial evidence.

plaintiff retained the ability to remember and carry out simple routine tasks on a consistent basis. Dr. Lahman found, in pertinent part, that plaintiff had the ability to understand, remember and perform simple one and two step tasks and could perform more detailed tasks if she has previous experience in those tasks, and that plaintiff had some concentration difficulties but she was clearly able to concentrate sufficiently to perform simple tasks. Both doctors found that plaintiff was limited in interaction with the public due to her phonological disorder. (Tr. 210, 326.) The ALJ found that plaintiff had documented symptomology consistent with affective/depressive disorder. (Tr. 558.) He assessed plaintiff's RFC as set out, supra, including, in pertinent part the functional capacity to perform simple, routine, repetitive work with no more than occasional public contact. (Tr. 561, 563.) On this record, the court finds that the ALJ included functional limitations due to plaintiff's depression/dysthymic disorder.

## Step five determination

### Reliance on Medical-Vocational rule 202.20

Plaintiff contends that the ALJ erred in relying on the Medical-Vocational Guidelines (the grids) in finding her disabled because she has both exertional and non-exertional limitations. It appears she also asserts he erred by applying his own vocational expertise to determine that her vocational profile would not vary from the grids.

The grids are a matrix system used to determine disability in cases where the claimant has uniform levels of impairment. An ALJ may apply the Grids if the Grids accurately and completely describe a claimant's abilities and limitations. Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). If plaintiff suffers

from a nonexertional impairment which is sufficiently severe that it significantly restricts performance of a full range of work at the strength or exertional RFC level, the grids are inapplicable and the ALJ must call a vocational expert to testify. Lounsbury v. Barnhart, 468 F.3d 1111, 1115 & n.2 (9th Cir. 2006); Hoopai v. Astrue, 499 F.3d 1071, 1075-76 (9th Cir. 2007); Burkhart, 856 F.2d at 1340. The grids must always be consulted first in the event they direct a finding of disability. Lounsbury, 468 F.3d at 1115-16.

Here, the ALJ consulted the grids related to plaintiff's age, education, and work experience with the RFC to perform the full range of light work, Rule 202.20, which directed a finding of "not disabled." He went on to find that "the additional limitations had little or no effect on the occupational base of unskilled light jobs," such that a finding of "not disabled" was appropriate under the framework of Rule 202.20. (Tr. 565.) It is proper for the ALJ to make the determination whether the limitation is sufficiently severe so as to significantly restrict the range of work permitted by a claimant's exertional limitation. Tackett, 180 F.3d at 1102 ("'The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations.'"); see Hoopai, 499 F.3d at 1076; Burkhart, 856 F.2d at 1341. No error occurred in this regard.

Plaintiff asserts in her opening brief that she has less than a high school education because of special education classes such that grid Rule 202.20 does not apply, but concedes in her reply that, even allowing for less than a high school education, Rule 202.17 directs a finding of "not disabled."

//

//

22 - REPORT AND RECOMMENDATION

**Vocational testimony**

Plaintiff contends that the ALJ erred by failing to certify that the vocational testimony was consistent with the DOT. Pursuant to SSR 00-4p, an ALJ must inquire of a vocational expert (VE) if the testimony given regarding the requirements of a job conflicts with the DOT and, if so, whether there is a reasonable explanation for the conflict. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007). However, such a failure to inquire is a procedural error and will be considered harmless where there is no conflict with the DOT or where the VE provides sufficient support for the conclusion. Id. at 1154 n.19; see Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, (9th Cir. 2009) ("When there is a conflict between the VE evidence and the DOT, it is a duty of the ALJ to inquire on the record as to the reason for the inconsistency before relying on the VE's evidence."). Here, the ALJ relied on the VE's testimony given at the September 2007 hearing in determining that plaintiff could perform the jobs of garment sorter, electronics worker, and box filler.[6] At that hearing, ALJ Jones did not inquire whether the jobs identified were consistent with the DOT. However, other than plaintiff's assertion that the ALJ has the affirmative duty to inquire, she makes no showing that the requirements of the jobs identified conflict with the DOT such that she was prejudiced thereby. See Shinseki v. Sanders, ___ U.S. ___, 129 S. Ct. 1696, 1706 (2009).

The court finds no error in the ALJ's step five determination.

//

//

---

[6] The ALJ states in his decision that he relied on the VE testimony from the August 10, 2005, hearing. (Tr. 565.) This is not correct, since the jobs he identifies are jobs that were identified by the VE at the September 2007 hearing. (Tr. 610.)

23 - REPORT AND RECOMMENDATION

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge.  *Objections to this Report and Recommendation, if any, are due by October 18, 2010.  If objections are filed, any response to the objections are due by November 4, 2010, see* Federal Rules of Civil Procedure *72 and 6.*

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___3○___ day of September, 2010.

_____
MARK D. CLARKE
United States Magistrate Judge

24 - REPORT AND RECOMMENDATION